Acme Laundry and Dry Cleaning Co. et al., Appellants, v. Mahoney, Director, etc., Appellee.

Common Pleas Court, Franklin County.

No. 214910.  Decided February 28, 1963.

*Messrs. Topper & Alloway* and *Mr. N. Victor Goodman*, for appellants.

*Mr. William Saxbe*, attorney general, for appellee.

REYNOLDS, J. This case is before the Court on appeal from an order of the Director of Industrial Relations, filed August 24, 1962, fixing minimum wages for the laundry business.

Following is said order:

"BE IT REMEMBERED, that I, Margaret A. Mahoney, as Director of Industrial Relations, in accordance with and in pursuance to the law, having conferred with Vera C. Benz, Superintendent of the Minimum Wage Division, Department of Industrial Relations, having carefully considered the report and recommendation of the Wage Board for the Laundry Industry of Ohio, and the Laundry Wage Board Minority Report, as submitted by the three dissenting members of said Wage Board, and having held a Public Hearing on July 26, 1962, and August 8, 1962, at which were heard opponents and proponents of the said recommendations of said Wage Board, have on this 17th day of August, 1962, decided to and do hereby approve the report of said Wage Board.

"A directory order shall be issued defining minimum fair wages for the laundry industry, including Administrative Regulations, said directory order to be known as Directory Order No. 1."

The directory order No. 1 above referred to, reads as follows:

"Governing women and minors in laundry occupations in the Laundry Industry.

"*Wages*:

"There is established a minimum fair wage for women and minors employed in the Laundry Industry in Ohio as follows:

"(a) That such minimum wage shall be $1.00 per hour commencing October 1, 1962;

"(b) That such minimum wage shall be increased to $1.10 per hour commencing October 1, 1963;

"(c) That such minimum wage shall be increased to $1.20 per hour commencing July 1, 1964;

"(d) That such minimum wage shall be increased to $1.25 per hour commencing January 1, 1965.

"*Learners & Apprentices*:

"The minimum wage rates for women and minors employed in the laundry industry during periods of learning or apprenticeship not to exceed 90 days shall be 15c per hour less than the above prescribed minimum wage rate.

"*Handicapped Persons*:

"The Director of the Department of Industrial Relations shall make adjustments in the foregoing recommended minimum wage rates governing employment of handicapped persons, commensurate with their ability to perform the services required of them, provided that the differential in the minimum wage rates for handicapped persons shall not be more than 20%.

"*Meals and Lodging*:

"Employers covered by the foregoing who provide meals or lodging for their employees may take credit for such meals or lodging as prescribed by the Director of the Department of Industrial Relations under Administrative Regulations.

"*Definitions*:

"Laundry Industry: (1) Washing of fabrics or textiles of any kind whatsoever, and the ironing, pressing, repairing or processing incidental thereto; (2) solicitation, collection, distribution, rental or sale at retail or wholesale of the articles so processed; (3) producing of laundry service for their own use by business establishments, clubs or institutions; (4) includes launderettes and automatice and coin-operated laundries.

"*Administrative Regulations*:

"1. Method of Computing Minimum Wage: The wage paid shall be at least the minimum wage rate, whether the wage is on a commission, bonus, piece rate, time or other basis.

"2. Application: The same minimum fair wage standards which apply to women over 21 shall apply to all women and minors except such as may be specially licensed under "Handicapped Persons" above,

"3. Handicapped Persons License; Rates; No woman or minor whose earning capacity has been impaired may be paid at less than the minimum fair wage standards until a special license has been obtained by the employer from the Department of Industrial Relations (Division of Minimum Wage). Commensurate with their ability to perform the services required of them, the differential in the minimum wage for handicapped persons shall not be more than 20 per cent.

"4. Learners & Apprentices; Definition: A learner or apprentice shall be construed as any employee having less than 90 days experience in an occupation in the laundry industry. The reduced rate applicable to learners and apprentices shall be 15c per hour less than the above prescribed minimum wage rate and such reduced rate may be paid for a period not to exceed 90 days.

"5. Locality: The minimum fair wage rate shall be the same throughout the State.

"6. Waiting Time: Time during regular working hours, and at other periods when employees are required to wait on the premises and no work is provided for by the employer, shall be counted as working time and paid for at the individual employee's regular wage rate.

"7. Combined Laundry and Dry Cleaning Employees: Women and Minors engaged at combined laundry and dry cleaning occupations as part of one job shall be paid for all time worked at each occupation at the minimum fair rate designated for each occupation.

"8. Meals and Lodging; Value: Meals, Lodging, or both. When meals or lodging are furnished by the employer as part of the minimum wage, they shall not be valued at more than: breakfast 30c; lunch 45c; dinner 65c; lodging $4.00 per week.

"9. Records: Each employer shall keep a record, in a form prescribed by the Director of Industrial Relations of the hours and wages of each employee, and shall, on demand, submit a sworn copy of such record to the Director or his representative, together with such other information as the Director may in his discretion deem necessary.

"10. Posting: A notice issued by the Department of Industrial Relations setting forth provisions of Directory Order

No. 1 and Administrative Regulations shall be posted in a conspicuous place in every room where women and minors are employed at Laundry occupations.

## "ORDER

"It is hereby declared that the above Order shall be known as Directory Order No. 1 and shall become effective October 1, 1962."

Appellants claim that the order is unlawful and unreasonable, setting out ten separate reasons or grounds to support this conclusion as follows to-wit:

"Now come the appellants and for assignments of error herein, state that the Director of the Department of Industrial Relations did not comply with the law adopting and amending her Minimum Wage Order for the laundry industry, and that said Minimum Wage Order as amended and adopted by the Department of Industrial Relations of the State of Ohio on the 17th day of August, 1962, is unlawful and unreasonable and in error in the following respects, to-wit:

"(1) That the Director of the Department of Industrial Relations failed to comply with the Minimum Wage Law of the State of Ohio (Sections 4111.01 to 4111.16, Revised Code), and with the Administrative Procedure Act of the State of Ohio, (particularly Sections 119.03 and 119.04, Revised Code), in adopting and amending said Minimum Wage Order and Directory Order No. 1.

"(2) That the Director of the Department of Industrial Relations has no authority under the laws of the State of Ohio, and particularly under Sections 4111.01 to 4111.16, inclusive, Revised Code, to issue a Minimum Wage Order containing an 'escalator' provision for a periodic successive series of increases in the minimum wages ordered, to be paid over a period of years.

"(3) That Sections 4111.01 through 4111.16, Revised Code, do not authorize the issuance of said order amending and adopting the recommendations of the said Minimum Wage Board as a Minimum Wage Order, and Directory Order No. 1.

"(4) That the said order of appellee, adopting and amending said Minimum Wage Order, and adopting Directory Order No. 1, is unreasonable and unlawful.

"(5) That said Minimum Wage Order, as amended and adopted, and Directory Order No. 1, have no real or substantial relation to, nor do either of the same promote or protect the public health, safety, morals or the general welfare.

"(6) That neither said Minimum Wage Order, nor Directory Order No. 1, as amended and adopted, were prepared and adopted with any reference to the value of services performed in the industry purported to be regulated thereunder.

"(7) Said Minimum Wage Order, and the Directory Order No. 1, as amended and adopted are an unlawful exercise of the police power and law-making power by an administrative department in violation of Section 1 of Article II of the Constitution of Ohio.

"(8) That the enforcement of said Minimum Wage Order and Directory Order No. 1, as amended and adopted, will constitute the taking of property of appellants and others, without due process of law, and also will constitute a denial of the equal protection of the law in violation of the State and Federal Constitutions (Sections 1 and 10 of Article I of the Constitution of Ohio and the 14th Amendment of the Constitution of the United States).

"(9) That the appellee had no authority to make any amendments or changes in the recommendation of said Minimum Wage Board and therefore said Minimum Wage Order, as amended and adopted is invalid and unlawful.

"(10) That the appellee had no authority to make any amendments or changes in the administrative regulations as advertised to the public, prior to adoption, and that therefore said Directory Order No. 1, as amended and adopted, is invalid and unlawful."

The Court finds from an examination of the record that all of the preliminary steps, for the fixing of a minimum wage in the laundry and dry cleaning industry have been complied with, such as the appointment of the board, the furnishing of information thereto, the taking of testimony, public hearings, and the filing of its report with the director, hearings thereon after public notice and after the acceptance of the report by the director.

The position of the appellants is that the Director, in making the order, did not make the order in conformity with the

report of the wage board but changed it in two respects, first, that while the Board recommended that in cases where employees were engaged in both laundry and dry cleaning work, the minimum wage for each employment should be at the minimum rate for the laundry industry, and the order of the Director changed this to the effect that persons so engaged shall be paid for all time worked at each occupation at the minimum fair rate designated for each occupation, and the second change made by the Director related to a credit of 30 cents to the employer where breakfast was furnished, whereas the Board recommended a credit of 35c for the same.

It is the position of the appellant that the Director must accept and approve the report of the Board without changes or reject it entirely. With this contention the Court is unable to agree.

Section 4111.07, Revised Code, provides as follows:

"Within ten days after a hearing mentioned in Section 4111.06, Revised Code, the director of industrial relations shall confer with the superintendent of the minimum wage division and approve or disapprove the report of the wage board. If the report is disapproved the director may resubmit the matter to the same wage board or to a new wage board. If the report is approved the director shall make a directory order which shall define minimum fair wages in the occupation as recommended in the report of the wage board and which shall include such proposed administrative regulations as the director deems appropriate to implement the report of the wage board and to safeguard the minimum fair wage standards established. The administrative regulations may include, among other things, regulations defining and governing learners and apprentices, their rates, number, proportion or length of service, piece rates or their relation to time rates, overtime or part-time rates, bonuses or special pay for special or extra work, deductions for board, lodging, apparel, or other items or services supplied by the employer, and other special conditions or circumstances. In view of the diversities and complexities of different occupations and the dangers of evasion and nullification, *the director may provide in such regulations, without departing from the basic minimum rates recommended by the wage board, such modifications or reductions of or additions to such rates in or*

*for such special cases or classes of cases as those enumerated in this section as the director finds appropriate to safeguard the basic minimum rates established.''* (Emphasis ours.)

It therefore appears that the Director does have authority to make such changes in the report of the Board as are found appropriate to safeguard the basic minimum rates established.

As another evidence that the Legislature intended that changes could be made, it is provided in Section 119.03 (D), Revised Code, of the Administrative Procedure Act, that ''after complying with divisions (A), (B), and (C) * * *'' (covering notice and hearing on proposed rules), ''the agency may issue an order adopting such proposed rule, amendment, or rescission, or revision thereof, consistent with the public notice * * *.''

By interpreting the several applicable sections so as to give some flexibility for a deviation from the report of the Board, we arrive at a workable and sensible solution of the problem involved.

To hold otherwise would be to put an agency in a straight jacket and render the efforts of a fact-finding Board of no avail, if the agency were not permitted to make a minor change, even though so to do would not result in prejudice or hardship to the parties involved.

Here the change with respect to the minimum wage for persons engaged in both laundry and dry cleaning works to the benefit of the employers of such persons and the change in the allowance for breakfasts is so nominal as to be almost negligible.

What has been said concerning the first assignment of error applies also to the 3rd and 4th assignments of error.

With respect to the 5th assignment, all that need be said is that in relating the report to the reasons and purpose of appointing the Board, it must be concluded that public health and general welfare were considered by the Board and entered into its report.

The Board was appointed for the reason, among others, that the Director had information that a substantial number of women and minors employed in the laundry industry were receiving oppressive and unreasonable wages.

Section 4111.01, Revised Code, Sec. (E) defines oppressive and unreasonable wages as a ''wage which is both less than

the fair and reasonable value of the service rendered and less than sufficient to meet the minimum cost of living necessary to health.''

Certainly there is a direct relation between public health and general welfare and a wage that is oppressive and unreasonable.

As to the 6th assignment of error, the Court, from a reading of the record, concludes that consideration was given to the value of the services rendered, but that was only a part of what was considered.

The 7th assignment of error charges an unlawful exercise of the police power. All that needs be said in this point is that Courts have repeatedly held that the fixing of minimum wages is not a violation of the constitutional provisions.

The same may be said of the 8th assignment of error.

The 9th and 10th assignments of error have been answered by what was said about the first assignment.

Appellants insist that the Board, in fixing a minimum wage is confined solely to the question as to the value of the services and that cost of living has no part in the fixing of a fair wage, and rely on the case of *Adkins* v. *Childrens' Hospital*, 261 U. S., 525, in which case the Court held that:

''The minimum wage act of Sept. 10, 1918, in assuming to authorize the fixing of minimum wage standards for adult women, in any occupation in the District of Columbia, such standards to be based wholly upon what a board and its advisers may find to be an adequate wage to meet the necessary cost of living for women workers in each particular calling and to maintain them in good health and protect their morals, is an unconstitutional interference with the liberty of contract.''

Unfortunately for appellants, this case was specifically overruled by the U. S. Supreme Court in the case of *West Coast Hotel Co.* v. *Parrish*, 300 U. S., 379.

In that case which involved a statute of the State of Washington, similar to the Ohio Minimum Wage Law, the Court said:

''The minimum wage to be paid under the Washington statute is fixed after full consideration by representatives of employers, employees and the public. It may be assumed that the minimum wage is fixed in consideration of the services that

are performed in the particular occupations under normal conditions.''

Provision is made for special licenses at less wages in the case of women who are incapable of full service. The statement of Justice Holmes in the *Adkins case* is pertinent:

(In a dissenting opinion)

''This statute does not compel anybody to pay anything. It simply forbids employment at rates below those fixed as the minimum requirement of health and right living. It is safe to assume that women will not be employed at even the lowest wages allowed unless they earn them, or unless the employer's business can sustain the burden. In short, the law, in its character and operation, is like hundreds of so-called police laws that have been upheld.''

The argument of appellants that ''fair wage'' means only a wage which is fairly and reasonably commensurate with the value of the services rendered, overlook both the purpose of the minimum wage law and the wording of the entire statute.

While it is true that Section 4111.01, paragraph F, Revised Code, defines ''Fair Wage'' as a wage fairly and reasonably commensurate with the value of the service rendered, it also provides that in arriving at a ''Fair Wage'' the Wage Board may take into account ''all relevant circumstances affecting the value of the service rendered,'' may be guided by like consideration as would guide a court in a suit for the reasonable value for services rendered where there is no contract or agreement, and may consider the wages paid in the state for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards.

Thus it is seen that value of service is not the only thing to be considered in determining a fair wage, and among other things the Board may take into account all relevant circumstances affecting the value of the service rendered.

One of the circumstances is the effect of provisions of Section 4111.03, Revised Code, which provides that:

''No employer shall employ any woman or minor in an occupation at an oppressive and unreasonable wage * * *.''

It follows as a matter of course that, if the value of the service is only such as would result in an oppressive and un-

reasonable wage, any wage so based would be unlawful and therefore not a fair wage.

We start with the proposition that before appointing the Board, the Director had found that there were women and minors employed in Ohio at an oppressive and unreasonable wage, and that it was to correct this condition that the Board was appointed and organized.

It necessarily follows that to correct the said condition, living necessities must be taken into consideration.

As Judge Holmes well stated, a minimum wage does not compel anybody to pay anything. It simply forbids employment at rates below those fixed as the minimum requirement of health and right living.

This leaves only the question raised concerning the so-called escalator clause by which the minimum wage was fixed both for the immediate present at $1.00 per hour and also for the years beginning October 1, 1963, at $1.10 per hour, October 1, 1964, at $1.20 per hour and October 1, 1965, at $1.25 per hour.

We must conclude that the Board, taking into consideration all the proper circumstances found that presently $1.00 per hour was a fair minimum wage.

Assuming that the facts and circumstances warrant such a finding, the query naturally presents itself as to why and on what facts there is a finding that an increase of ten cents per hour for each of the next two years and five cents per hour for the third year are necessary to constitute a fair wage.

From a reading of Sec. 4111.09, Revised Code, it appears to the Court that the Legislature must have contemplated that the establishment of a fair wage would be in effect for at least one year before there should be any modification thereof.

Section 4111.09, Revised Code, provides as follows:

"At any time after a minimum fair wage order has been in effect for one year or more, whether during such period it has been directory or mandatory, the director of industrial relations may on his own motion, after conferring with the superintendent of the minimum wage division, or, if petitioned by fifty or more residents of the state, the director shall reconsider the minimum fair wage rates set therein and recon-

vene the same wage board or appoint a new board to recommend whether the rates contained in the order should be modified. The report of the wage board shall be dealt with in the manner prescribed in Sections 4111.06 and 4111.07, Revised Code. If the order under reconsideration has theretofore been made mandatory in whole or in part by the director under Section 4111.08, Revised Code, the director in making any new order or confirming any old order may declare to what extent such order is directory and to what extent mandatory.''

It is argued that this provision as to a modification only contemplates a reduction of the minimum wage, but with this argument the Court cannot agree and concludes that as here used, it means either an increase or a decease of the minimum wage.

This conclusion is in accord with an opinion of the Attorney General, 1948 O. A. G. 3532, reading as follows:

''Wage board, convened by director of industrial relations pursuant to terms of this section, is empowered under provisions of said section (Section 4111.09, Revised Code), to recommend an increase as well as a reduction in existing wage rates.''

The Court concludes that in so far as the order of the Director under consideration provides for increases in one, two and three years in advance, is without authority and contrary to the law as enacted by the Legislature, and that the attempted fixing of a fair wage for future years is invalid.

The Court further finds that the balance of Directory Order No. 1 is a proper and valid order, supported by credible and substantial and probative evidence.

The order appealed from is sustained as to future wage increases, and the balance of the order is affirmed.